IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TODD FLOYD BATTS, | ) Civil Action No. 3:06-1875-TLW-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| OFFICER LYLES; | ) |
| CHRIS VAUGHN; AND | ) |
| SHERIFF CRENSHAW, | ) |
| | ) **MAGISTRATE JUDGE'S** |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants, | ) |
| | ) |

Plaintiff filed this action on June 26, 2006.[1] Plaintiff is currently detained at the Anderson County Detention Center ("ACDC"). Defendants John Doe, Officer Lyle, and Sheriff Crenshaw filed a motion for summary judgment on August 24, 2004. Because Plaintiff is proceeding pro se, he was advised on August 29, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed an affidavit on September 1, 2006. On October 25, 2006, Plaintiff filed a motion to substitute a party (Officer Chris Vaughn for John Doe). On January 4, 2007, the undersigned granted Plaintiff's motion to substitute a party and set a deadline for Defendants to file any amended motion for summary judgment. Their original motion for summary judgment was withdrawn on January 16, 2007. Defendants filed an amended motion for summary judgment on

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

February 14, 2007.  A second Roseboro order was issued on February 20, 2007.  Plaintiff did not file a response.[2]

## DISCUSSION

Plaintiff alleges that he was arrested by Defendants Lyle and Vaughn on an unspecified date.[3]  He claims that these Defendants ordered him to the ground and then they kicked and stomped him on his back, resulting in a back injury.  Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to state a claim against Defendants upon which relief can be granted; (2) Defendant Crenshaw cannot be held liable as a matter of law in any supervisory capacity for any acts of others over which he had no control; (3) Plaintiff's action against Defendant Lyles should be dismissed as a matter of law as he was not involved in any arrest of Plaintiff; (4) Plaintiff's action should be dismissed because the matters asserted by Plaintiff do not fall within the scope of 42 U.S.C. § 1983; (5) Defendants are entitled to qualified immunity because their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known; (6) Plaintiff's complaint should be dismissed because he failed to allege federal court jurisdiction in his complaint;[4] (7) Plaintiff's complaint lacks an arguable basis in law and should be dismissed as frivolous under 28 U.S.C. § 1915; and (8) Defendants are entitled to Eleventh Amendment immunity.

---

[2] Plaintiff's September 1, 2006 affidavit was considered by the undersigned in preparing this report and recommendation.

[3] Plaintiff's claims appear to concern his arrest on February 22, 2006.  See Vaughn Aff.

[4] Plaintiff alleges that his constitutional rights were violated.  The undersigned, for purposes of summary judgment, assumes that Plaintiff brought this action under 42 U.S.C. § 1983.

2

1.      Defendant Crenshaw

Defendant Sheriff Crenshaw contends that this action should be dismissed as to him because Plaintiff fails to state a claim against him. He further contends that Plaintiff cannot establish a claim against him on a theory of supervisory liability.

Plaintiff did not mention Crenshaw in the body of his complaint and has made no allegations against Crenshaw. Crenshaw states that he does not recall being involved in any arrest involving Plaintiff, he has not been able to locate any record showing that he was involved with the arrest of Plaintiff at any time, he did not strike Plaintiff, he is unaware of any Sheriff's Office employee using any type of improper force on Plaintiff, and he has no personal knowledge concerning the allegations set forth by Plaintiff. Crenshaw Aff..

Further, the doctrine of respondeat superior generally is inapplicable to § 1983 and Bivens actions, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982); Wright v. Smith, 21 F.3d 496 (2d Cir. 1994); and Howard v. Federal Bureau of Prisons, 1999 WL 798883, 198 F.3d 236 (4th Cir. 1999)[Table]. Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Here, Plaintiff has not alleged any personal involvement of Crenshaw in the alleged actions. He has not alleged that Crenshaw was actively and knowingly involved with the alleged

unconstitutional conduct. Thus, Defendant Crenshaw should not be held liable pursuant to a theory of supervisory liability.

    2.    <u>Excessive Force</u>

Plaintiff alleges that Defendants Vaughn and Lyles violated his Eighth Amendment rights during his arrest because they kicked and stomped him in the back while he was on the ground. Defendants contend that Plaintiff fails to show that his constitutional rights were violated because their actions were objectively reasonable and any injuries sustained by Plaintiff were de minimis. Defendant Lyles also contends that this action should be dismissed as to him because he was not involved in any arrest of Plaintiff and had no physical contact with Plaintiff. Lyles states that he was present when Plaintiff was arrested on December 29, 2005, but was not the arresting officer and did not assist in the arrest of Plaintiff and had no physical contact of any kind with Plaintiff.[5]

Anderson County Sheriff's Department ("Sheriff's Department") Detective Michael Sloan ("Sloan") states that another person, Patrick Todd Smith ("Smith"), was wanted in February 2006 for approximately 35 different criminal offenses, including grand larceny and auto theft. He received a tip from a confidential informant that Smith would be coming through an intersection at Zeke's Convenience store ("Zeke's") in a certain vehicle at an approximate time. Sloan, Vaughn, and other officers with the Sheriff's Department staked out the area around Zeke's. After seeing a truck matching the description, Vaughn and Sloan (each in a separate car) began pursuit of the vehicle. A high-speed pursuit occurred for approximately three to five miles until the truck went

---

[5]As noted above, Plaintiff has not specified the date of the alleged incident, but it appears to have been on February 22, 2006. Even if Lyles participated in the alleged use of excessive force, Plaintiff fails to show that Lyles violated his constitutional rights, as discussed below.

out of control and spun out in a vacant lot next to a trailer. Sloan stopped his car and proceeded on foot toward the vehicle. He saw Vaughn kneeling beside Plaintiff. Sloan saw that the suspect was not Smith and stated this to Vaughn. A lady pointed to a wooded area where an alleged second occupant of the vehicle fled. Sloan attempted to locate the second person, assumed to be Smith, but was unable to find him. Plaintiff gave his name and stated that "Country" (a known nickname for Smith) was driving the truck. Sloan states that Plaintiff appeared to be impaired by drugs and/or alcohol. Plaintiff was taken to the Sheriff's Department, at which time Plaintiff told Sloan that he and Smith had been riding around smoking crack. Sloan states that during his interview with Plaintiff, Plaintiff did not complain of any injuries, request medical attention, or complain about any improper action on the part of any officer. Smith was arrested by Sloan several weeks later. Sloan states that at some point after Smith was incarcerated, ACDC detention officer Goolsby contacted him. Goolsby found notes from Plaintiff and Smith in which Plaintiff stated that he would give money to Smith from a civil action he was going to file against the Sheriff's Department if Smith would take responsibility for the criminal charges. Sloan states that Smith confirmed Plaintiff wrote the letters. Sloan Aff.

Vaughn states that he ordered Plaintiff to get on the ground; Plaintiff did not initially comply with the instructions; Plaintiff later started to get down on the ground; when Plaintiff was almost on the ground, Vaughn started to approach Plaintiff to place Plaintiff in handcuffs; Plaintiff started to get up despite Vaughn's order to stay on the ground; Vaughn did not know if Plaintiff had a weapon or intended to resist arrest; Vaughn administered a leg strike to Plaintiff's side and attempted to administer two brachial stuns to subdue Plaintiff; Plaintiff collapsed to the ground; and Vaughn placed Plaintiff in handcuffs. He states that Plaintiff did not ask for medical attention, never

5

complained of medical issues or that any force had been used improperly, and Plaintiff smelled of alcohol and admitted using crack cocaine.  Vaughn Aff.

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person.  Graham v. Connor, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Tennessee v. Garner, 471 U.S. 1, 8 (1985)(quoting United States v. Place, 462 U.S. 696, 703 (1983),  see also Lester v. City of Chicago, 830 F.2d 706, 711 (7th Cir. 1987).  The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case.  Garner, 471 U.S. at 8-9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure").  In striking this balance, due regard must be given to the fact that police officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing.  See Lester, 830 F.2d at 712; see also Garner, 471 U.S. at 26 (O'Connor, J., dissenting). Factors to consider in this analysis include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  The court must also consider the extent of the injuries caused to the plaintiff. See Jones v. Buchanan, 325 F.3d 520, 530-31 (4th Cir. 2003) (internal citations omitted); see also Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002).  The reasonableness of the officers' use of force must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396

(recognizing that the police must often make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving").

The standard of "reasonableness" under the Fourth Amendment is wholly objective; the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation. Scott v. United States, 436 U.S. 128, 137-38 (1977); see Terry v. Ohio, 392 U.S. 1, 21-22 (in assessing the reasonableness of a particular search or seizure "it is imperative that the facts be judged against an objective standard"). Subjectively bad intentions on the part of the individual officer will not make a constitutional violation out of an otherwise reasonable seizure; nor will subjectively good intentions render an objectively unreasonable seizure constitutional. Id.; see Lester, 830 F.2d at 712. The clearly established standard for the use of excessive force at the time of this incident was whether a reasonable officer in the defendants' place could have had probable cause to believe that the plaintiff posed a threat of serious harm to others. See Garner, 471 U.S. at 11.

Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them. First, Vaughn thought that the individual he was arresting was Smith, who was wanted on approximately 35 different criminal charges. Plaintiff was in a vehicle that was involved in an almost five mile high-speed chase. Second, it appears that Plaintiff posed an immediate threat to the safety of the officer or others as Plaintiff was involved in a high-speed chase fleeing from officers. Third, Plaintiff appeared to be actively resisting arrest or attempting to evade arrest by flight by failing to stop for the officers and appeared to be under the influence of drugs and/or alcohol. Vaughn also states that Plaintiff did not initially comply with his instructions to get on the

ground, and started to get back up as he approached Plaintiff to place Plaintiff in handcuffs. Vaughn Aff., Paras. 23-24.

Additionally, Plaintiff fails to show more than de minimis injury. Richie v. Jackson, 98 F.3d 1335, 1996 WL 585152, *2 (4th Cir. 1996)[Table]; Joos v. Ratliff, 97 F.3d 1125, 1126 (8th Cir.1996) (per curiam) ("de minimis" amount of force in effecting an arrest would be insufficient to create constitutional issue). Where a plaintiff can point to no evidence of visible injury at the time of the incident and can point to no medical evidence of serious lasting injuries caused by any alleged use of force, a plaintiff's unsubstantiated claims of permanent injury are entitled to little weight. See Foster v. Metropolitan Airports Comm'r, 914 F.2d 1076, 1082 (8th Cir.1990)(claims of nerve damage and pain, without medical records establishing long-term injury, insufficient to demonstrate use of excessive force). Where a plaintiff's claims of serious injury are entitled to little weight, so are his claims of excessive force. Cooper v. City of Virginia Beach, 817 F. Supp. 1310, 1318 (E.D.Va.1993) ("lasting or serious injury" must be proven to escape summary judgment in excessive force case), aff'd, 21 F.3d 421 (4th Cir.1994) [Table]. In his complaint, Plaintiff merely asserts that he suffered an unspecified back injury. In his affidavit, Plaintiff claims that he was examined two months after his arrest by a physician at ACDC who detected a back injury and prescribed medications, but Plaintiff has provided no medical records or other information to show that this alleged back problem was related to his arrest. Further, Plaintiff has presented no evidence that he required any further medical care.

    3.    <u>Immunity</u>

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the

state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.

In Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd mem., 878 F.2d 379 (4th Cir. 1989)[Table], the court addressed whether South Carolina sheriffs were state or county officials. The court applied South Carolina common law principles of the master and servant relationship and concluded that sheriffs are state officials. Id. at 954-955. The Fourth Circuit concluded, in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), that the Greenville County sheriff, in his capacity as a state official, was immune from suit for monetary damages under § 1983. Id. at 1332. Further, in

Gulledge, the district court concluded that deputy sheriffs are agents of the sheriff and therefore under state, not county, control. Gulledge, supra; see also Heath v. Aiken County, 368 S.E.2d 904 (S.C. 1988). In Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992), the South Carolina Supreme Court cited Gulledge with approval and specifically held that South Carolina sheriffs and their deputies are state officials for § 1983 purposes. Defendants provide that they are employed by the Anderson County Sheriff's Department. See Lyles, Vaughn, and Crenshaw Affs. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly

10

established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 31) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

April 20, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

12